The Mr. Donahue. Good morning, your honors, and may it please the court. My name is Keith Donahue. I represent appellant John Doe. With me at the appellant's table is Mark Rumold, representing the Electronic Frontier Foundation. If I may, I'd like to reserve four minutes of my time for rebuttal. It's done. Your honors, in part, this case is about advances in contemporary technology. But perhaps more fundamentally, it's about an age-old form of coercion that was the very reason for the adoption of the Fifth Amendment. And that's the coercion of being forced either to confess the contents of your own mind, or else be locked up indefinitely, perhaps even perpetually, even without charges. That's precisely the situation my client is in, and so we implore the court to vindicate that basic constitutional guarantee. Okay, we've spent time with the briefs and the cases, so maybe we can get right into the questions. You say that giving the code, that pass code, the decryption code, is testimonial per se. And that, this is on page 37 of your opening brief, you say the analysis need go no further. That's your position. That's it. And I thought that was interesting because it seems like there is an act of production going on here too. Isn't there an act of production involved as well as, indeed they didn't say give us the pass code, they said enter the pass code because they want what's in the hard drives, right? Correct, he's supposed to enter the password into the government's interface. Okay, so if it's the case that there is an act of production involved, isn't it then also true that we do need to go further? Even if we agree with you that there's a testimonial aspect to the act of production, since there is an act of production involved, we do need to wrestle with the question of whether or not there is, as the lingo has it, some sort of foregone conclusion here, right? Respectfully, your honor, I wouldn't agree there's an act of production except producing the password, which isn't, they don't even care whether he gives them the password. They didn't say tell us the password. They said enter the password because what they want and what you've relied on heavily in your briefing is they want what's in the hard drive. They don't care what the password is, they care what's in the hard drive. That is production, isn't it? I don't believe so, your honor. I don't believe the government's readiness to assert that it doesn't care about the password, all it cares about is the contents, is the perspective that controls here. For the purpose of the Fifth Amendment, the perspective that controls is that of the suspect. And here's why I don't think it's an act of production, or I don't think that's a felicitous way of putting it. What Mr. Doe is being called upon to do is perform a mental process which will result in an act of production, right? It will result in the act of typing something into a machine. Take it out of the digital world, Mr. Donahue. Assume we had a safe that was full of photographs that the government asserts are child-born, and they say to them, open the safe and give us those pictures. We want what's in the safe. Would your assertion really be that this is pure testimony? They don't really want what's in the safe. They acknowledge that they want what's in the safe. How can you say that's not an act of production? Well, I think that analogy is fundamentally different from what's involved here. What that analogy supposes is that a suspect is served with a subpoena saying, give us all your documents in that safe, right? And I agree that if the government were to show in that instance that the existence of the documents and their location in the safe were a foregone conclusion, then it would make no difference that the suspect in his home has to undo the combination lock, retrieve the documents, and hand them over. That is not the situation we have here. And in fact, that points to a fundamental distinction, which is the act of production doctrine has always been applied before in the context of subpoenas. Okay. Don't take me away into grand jury versus some other kind of forced production. Let's stick on this point, if my colleagues will indulge me for a minute. You're saying this is fundamentally different. I'm not getting it. How is it fundamentally different to do in the digital world what I've described happening in the physical world? There are files alleged to be on those hard drives. The government says indeed there are files that they can say with pretty good certainty that they believe are on those hard drives. So how is it any different to say I've got digital files, give them to me. You've got digital files, give them to me. As opposed to saying you've got physical files, unlock the safe with the fundamental difference is that he's not being asked to produce specific documents. They're not asking him to produce specific documents. They're asking him to recall a memorized code, type it into a computer to help them understand what's on that computer. And actually, while there are distinctions between the digital context, and my colleague may speak to them, I'm not trying to rest the argument on a digital physical distinction. Let me try to offer a perfectly physical example that I think represents what my client is being compelled to do here. Let's imagine if the police are onto a person they believe to be a kidnapping suspect. And they see him writing something on a slip of paper and heading off to what they know may be a delivery point for a ransom note. So they intercept him. They seize the piece of paper. They open it up. It turns out it's in a different language. He could not be compelled, I think we would agree, either to translate the note for them, nor even so much as to tell them what language the note is in. And that's the heart of what my client is being asked to do. It doesn't matter that he's typing it into the government's machine rather than speaking it aloud. That is a fallacious distinction. What matters is that he's being called upon to communicate, explicitly communicate the contents of his own mind to help the government understand evidence in its possession. The government produced evidence that it was a foregone conclusion as to what was contained there, Doe provided no testimony to the contrary. He did not appeal the order that was based upon the fact that assuming it was testimony that it doesn't matter because what's contained there is a foregone conclusion that contains child porn. He did not appeal that order. What's your argument that that was plain error? My argument that it was plain error, although I'd like to return to why I don't think there was anything forfeited here. You don't think there was anything forfeited? I don't think the plain error standard applies, but I do think we'd prevail under it. Either one. If your honor says clear error, the magistrate reached a conclusion based upon testimony. He did not appeal it, so we'll call it clear error. What was he wrong? If we're looking at why the magistrate was wrong, he relied strictly on an affidavit submitted in support of a warrant application. So in terms of evaluating whether his determination was correct, we'd look at that warrant application. And I'd suggest that no reasonable person could look at that warrant application and conclude with any sort of certainty or even with much confidence that the government knows what's on the machine. I think in fact because it was a warrant affidavit, the magistrate understandably had kind of a probable cause rubric in his head. But as far as establishing a foregone conclusion, the warrant application certainly wasn't enough. It didn't even state that any particular image or any group of images of child pornography were known to be on the hard drives. Didn't even make that assertion. I thought there was an assertion that there was, based on the hash values, there was in fact a very high degree of confidence that there was child pornography on those hard drives. No? I don't concur in that. Let me talk about the hash values. I just want to note that now we're moving into testimony that was not the basis for the magistrate judge's conclusion, so I don't think we're here on clear error in this regard. What the hash values show, what the detective talked about, was that there was some kind of series of characters. There's an example of them in the appendix. And he could not say for certain. He said it was his best guess. That's his language. That sounds like an antonym for foregone conclusion. His best guess was that these hash values indicated there were files on the hard drives. Right. So if what's in front of the magistrate judge is that there's hash values indicating that there's pornography and there's no contrary evidence, how can it be clearly wrong for the magistrate judge to conclude there's sufficient evidence here that we can say the government knows with a sufficient degree of certainty that there's criminal evidence on the hard drives? Well, of course, it's the government's burden. The fact that Mr. Doe put on evidence is not necessarily here or there. No, but we're not talking about the government's burden. We're talking about how much does the magistrate judge have to know or understand before he or she could reasonably say, yeah, there's evidence here sufficient for me to say, let me back up, you seem to have said they just, you've implied it was complete guesswork. They didn't do anything to show that there was criminal activity going on. On the contrary, they put evidence in front of the judge and indicated there was criminal activity and that the evidence of it is on those hard drives. If Doe comes forward with nothing, then that's unrebutted. Why is that not enough for the magistrate judge to say, okay, I think that they've got evidence of sufficient particularity that it is a foregone conclusion that there's evidence of criminal activity contained on those hard drives? Well, it's not enough because the standard we're applying is whether they've shown to a foregone conclusion. This court has explained that what that means is the government must show it knows to a certainty that these specific documents it can identify with reasonable particularity are on the hard drive. So you're saying that it's not enough? It's not enough to believe there's probable cause to believe that there is evidence of criminal activity on the hard drive. They have to show that they know specific files. Absolutely, yes. That's a very well put point. It's a much higher standard than probable cause and it has to be specific files or reasonably particularized. What was the evidence, I want to get back to the hash values. What was the evidence with respect to the hash values that was presented to the magistrate judge? The hash values were, I'm familiar with cases, you can go back to a case like the Crist case or other cases, where they match a hash value that is known child pornography to what's actually on the hard drive. Was that done here? No. What we're at stake here was a slight variation from a hash value called a content hash key, let's call it close enough. They matched those hash keys to known images of child pornography that were elsewhere online. They were available through Freenet? Exactly. And what the detective would not say, the detective was candid, he would not say that meant the files were on the hard drives. He specifically stated it's a possibility. His best guess. And he also said both things, best guess, possibility. So there wasn't enough evidence, it wasn't shown to a certainty, that's this court's decision at 680 F2nd 327. It's hard to identify the decisions by name because they're all in rate. So they didn't show that to a certainty and when you look at the warrant application, which was the only basis for the description order, it's consistent with the detective's hesitation in this regard. The warrant application explains a little bit about how Freenet works. Before we get to that, there's an assumption in all of this discussion we've been having that the foregone conclusion doctrine is applying to what's on the hard drive. And I thought the foregone conclusion doctrine was applicable in circumstances where the testimonial thing that was being compelled was foregone. In other words, you could compel even a testimonial statement from somebody if what was in that testimony was a foregone conclusion. What is the implicit testimony in providing a password? What is the thing that is implicit in the act of production? What testimonial thing is implicit in the act of production of the password? Implicit in the production is an acknowledgement that these are my computers, that what exists on them is in my possession. What if they already know all that? That stuff is already foregone because there's plenty of evidence that these are his. He's not even questioning that these are his hard drives. Those are his hard drives. What's implicit in putting in the password? According to the way the Supreme Court has always applied the act of production doctrine, which I don't agree applies, so going to this doctrine, it's always said what's implicit in an act of production is acknowledging the existence of the documents sought to be produced, acknowledging the possession or control of those documents, and acknowledging the authenticity of those documents. I think the best place to look to piece that out, to begin to piece that out, is actually Justice Marshall's concurrence in the Fisher decision. He focuses on that. He says the court has gone a little bit apart from what commentators had been saying. Commentators had been saying it just communicates authenticity. And Justice Marshall said, no, actually the court has astutely recognized it also communicates existence and possession or control. Is it possible that the only thing implicit in turning over the password or giving the password is I know the password, that it says nothing about what's behind the wall that the password guards? On the doctrine that we're talking about, I don't think it's possible to look at it that way. In the logical abstract, the argument's been made. But that's not what the act of production doctrine, that's not how it works. I mean, in the most recent decision, the Hubble decision, the court said, the Supreme Court said, an act of production communicates the existence of whatever is being produced. It could have said, well, the government knows that that's there. It's not really communicating it. So it just doesn't take that view. Your Honor, I just have to- You've fought hard against the idea that he's producing what's on the hard drives, that it's the password itself that's significant here. If it's the password itself that's significant, then what's implicit other than I know the password? Your Honor, I've turned to an argument in the alternative because of Your Honor's focus on the act of production doctrine. All right, as you stated at the outset, I don't believe applying the act of production doctrine here has any possible basis in law or logic. So it is the password that he's producing. And you know what? He's not producing it implicitly. He's communicating it explicitly. And yes, he's doing that by typing into a forensic machine, but it's still an explicit communication of the contents of his own mind. It's fundamentally different from an act. The only place that doctrine applies is where the entire communication of information, information that's distinct from the documents itself, is tacit. And this is not an instance of tacit communication. It's explicit communication. Okay. Okay. Thank you very much, Mr. Donahue. Mr. Rimmel. Good morning, Your Honor. It's Mark Rimmel for Amici Electronic Frontier Foundation and the American Civil Liberties Union. May it please the courts. If I could, I'd like to start where my colleague, Mr. Donahue, left off addressing Judge Jordan's question about the implicit testimony involved in typing in a password or disclosing a password to the government. It's actually, I agree with Mr. Donahue, it's not a question of the implicit aspect of it. It is where the password comes from, that is the question. And the password, in this case, comes from the contents of Mr. Doe's mind. And when that is the case, that is fundamentally testimonial. Okay. And assume we accepted that. It's testimonial. Is the position that the EFF and ACLU have is that there's no such thing as a testimonial act of production? That is, something is either testimonial or an act of production and never the twain shall meet? Or is it possible to have an act of production which has within it a testimonial aspect? I certainly think that that can be the case. I think Fisher recognizes that. But that is not the case here. Here, once he types in the password, is there production or is there not? Well, after he types in the password, there may be production after that. That might be. There is, right? I mean, that's the whole point of having the password. There's no point to the password except to get production, right? That's correct. That's correct. But isn't the difference here that there's a conversion? That that password just doesn't open up the box? It changes everything that's on that computer. Yeah, that is one aspect of the testimonial nature here. There are really two. There's one about the testimonial nature of the password. And then there is an issue about the fundamental nature of encryption. It's important to know that when something is encrypted, it does not simultaneously exist in a decrypted version. So in that sense, it's not like some of the more privileged contacts. It's not like a document being stored in a strongbox with a key or even a wall safe with a document in it. Although I agree with Mr. Dunhue that for purposes of this case, it's sufficient for this court to decide it based on the wall safe metaphor. Does the government have the ability to learn what's on those hard drives without forcing Mr. Doe or Doe to type in a password or whatever he has to do to decrypt it? It's unclear. They may. There are methods to overcome encryption. We laid out a few in our brief. Some of them may not be available to the government at this point, but it is certainly possible to defeat encryption. The court need look no further than the facts of this case, where the laptop was actually encrypted and the government was able to overcome the encryption on that laptop. So while I can't speak to the possibility of the government being able to either brute force, which is basically a method of guessing a large number of passwords in order to overcome the encryption, there certainly are possibilities. I guess where my question was can the government go to the producer of the software that creates the encryption and ask for the key? My guess is, and here I am guessing, but I think in general it's not the case that encryption software providers store keys of their clients. If I could, let me ask if I can, because you started down this path before you shift off. In your mind, is there some fashion in which the encryption technology, the technology itself works, that has legal import in this case? Yes, I think it does. Please explain that. So as I was saying, some of the more readily accessible metaphors don't really apply in encryption because there is, there does not currently exist a decrypted version of the files. So there is nothing more for Mr. Doe to produce at this juncture. The government has the drives, it can see the data that is stored on the drives, but what the government can do is make sense of that data. And they need to use the unique contents of Mr. Doe's mind, or so they allege, that he can't actually decrypt the drives. It's not just what they allege, it's what a neutral independent fact finder decided to, right? Two of them said he was faking it. So unless that's clearly wrong, let's just take that as an operating point for purposes of discussion. Assume he's hiding it deliberately. That's neither here nor there for your point, I take it, which is it's testimonial, and they can't get at it without him giving it to them. In fact, I agree. It's actually irrelevant whether or not he knows them. It's evidence of the constitutional infirmity of the order in the first place that Mr. Doe is being placed in the position to either self-incriminate himself, commit perjury, or be held in contempt. Your brief says that disk encryption makes it impossible to distinguish between encrypted data and unused computer space. That's right. Okay. So we've got testimony in the case that there's some substantial portion of each of these hard drives, 51 percent in one case, somewhere north of 20 in the other, that are filled. Is it the EFF's position? Are you answering to us that those numbers mean nothing, that those are, you know, the 51 percent, 20-some percent, or that it could be gobbledygook? There's no way to distinguish at all? Well, Your Honor, we don't have access to the full record, so I can't comment directly on that. I can say that I am surprised that the government was able to reach that conclusion, because in circuit found, it creates, it makes it impossible to quantify the amount of data that is stored on the drive. Okay. Thanks very much, Mr. Emerald. We'll hear from the government. Good morning, Your Honors. May it please the Court, I'm Nathan Judish on behalf of the United States. The foregone conclusion doctrine distinguishes between when an act of production is testimonial and when it's a matter of surrender, and that's not testimonial and not protected by the Fifth Amendment. Why don't you start one question before that. You heard Mr. Donahue argue vigorously that there is no act of production involved here. This is pure testimony, and that ends the matter. The foregone conclusion doctrine doesn't even come into it. What's your response? To look at the court order, what DOE is required to do is to assist in producing the devices in a decrypted state. As the government has emphasized throughout this, DOE never needs to reveal the password. All we're after is getting the contents of the devices which DOE has encrypted. How was it that the government came to focus on DOE as a possessor of child pornography? There was an investigation of the Freenet service, which is often used to exchange pornography, and through that they became aware of DOE. Is it true that there's no evidence that any known child pornography file was determined to be on DOE's digital media? No, Your Honor. We have a great deal of evidence. Tell me what that is. First, we have the testimony of DOE's sister, to whom DOE showed his extensive child pornography collection. There's graphic testimony about what she saw in it, and she also that that computer was located. Beyond that, there is evidence from the forensics in this case, which starts with the fact that DOE accessed an enormous amount of child pornography on his computer. We have the CHK keys, more than 20,000 of those. Then the forensic analysts were able to go well beyond that. There is, because we were able to get into the Mac Pro computer itself, the analysts found evidence on that, which showed file paths on the still encrypted hard drives. And so that shows the file structure that DOE has been using, as well as the analysts were able to tell that certain files had been downloaded, and then by reviewing, seeing what that corresponded out in Freenet, to actually verify specific existing child pornography images. So really, we have just an enormous wealth of information that there is child pornography on these targeted devices. If the matter went to trial, you got what you wanted, and you were able to prosecute DOE for possession of child pornography or some related offense, could you, could the government put forward evidence of how it got a hold of the decrypted hard drive, or would that violate DOE's Fifth Amendment privilege? It's possible it would, but we don't need to in this case, because all of the potentially testimonial aspects of production, we can prove without that. We'll be able to, you know, show that these are the devices we seized, and we'll be able to testify that we got these files off them, and that should be sufficient for us to prove our case. Because if you did show you got it in the way you're actually wanting to get it, that would put you in Fifth Amendment danger? It is possible, Your Honor, and so, you know, that issue can certainly be re-raised at trial, and to make sure that nothing happens there which inappropriately infringes on DOE's Fifth Amendment privilege, but for now, the act of production here is a matter of surrender and not testimony. Decryption's becoming more and more common. It's viewed regularly now as an essential security practice. There was a seminar, Encryption for Lawyers, The Time Has Come, put out by, I think, the Pennsylvania Bar Institute, or the Practicing Lawyers Institute, Practicing Law Institute. Redmond Magazine advertised a six-series seminar, webinar, on decryption or encryption. I'm concerned about going forward with the recognition that encryption is probably something that at least every business should be doing, every law firm should be doing. Where are we going to draw the line on when compelling somebody to provide the key for the encryption to decrypt is not a Fifth Amendment problem? I mean, I think that Fisher provides an appropriate framework for analyzing this. We can only do this in these circumstances where we can show that all of the potentially testimonial components of the act of production are already known to the government, and I would note on this that if you were to adopt the arguments of the defendant here, it would essentially mean that nothing is ever going to be available because, you know, everything is going to be encrypted. And so, you know, if the document at issue in Fisher, you know, if that happened, today if you sought to compel production about one single document where you had clear evidence that exists, almost certainly it would be encrypted, and if it's sufficient to say, no, it's encrypted, therefore the foregone conclusion doctrine can never apply to it, I think that's pretty much the end of the foregone conclusion and the ability to compel disclosure of information. There was a news article this week, and the remains of Jacob Long in Minnesota, the suspect had been, there had been a key suspect for a long time, and ultimately he led them to the remains, and how is this different? Somebody's decided to hide what they're doing, hide what they're doing, I'm not justifying that at all, but hide what they're doing, and you force that person then to say, show us where it's at. And you could have gone to Mr. Heinrich and said, show us, take us to the grave of Jacob Wetterly. There are two active productions in both cases, you apply a foregone conclusion doctrine, but in the case of someone who may or may not have killed someone, it's not likely to be a foregone, I mean, unless you can really actually satisfy the foregone conclusion component. So you have a foregone conclusion that there's child pornography on these hard drives. Is the government willing to waive the Plain View Doctrine for evidence of any other criminal activity that may be on the hard drives besides possession of child pornography? No, Your Honor, I mean, the Fourth Amendment and the Fifth Amendment really apply separately here, and the government's not required to waive the Fourth, waive the Plain View Doctrine, which is, you know, it's an inherent part of the Fourth Amendment. So the act of decryption could provide the government with evidence of other criminal activity beyond what they're I think it's potentially possible, but I guess the key point with the foregone conclusion doctrine is the question is what are the potentially testimonial components of the act of production, and that they don't go to every single thing which may be recorded on the device. It's, you know, But isn't that what makes this different in the digital world, that there's so much more on that hard drive that the government gets access to beyond what it's actually looking for, that it can then use for a criminal prosecution? I think those privacy concerns are appropriately protected by the Fourth Amendment. If courts ultimately decided that the Fourth Amendment and the standard rules for a search warrant and the Plain View Doctrine were incompatible, then, you know, that should be decided in Fourth Amendment context, but not sort of Fifth Amendment. That's the case we're confronted with, right? We're confronted with a case where you're acknowledging that there could be a whole bunch of stuff on child pornography, and yet the government's taking the position that it's all Plain View. I mean, are you asking us to ignore the Fourth Amendment implications? I mean, certainly, if that were the situation, the defendant could have raised that as part of a Fifth Amendment defense. I mean, it's clear that one must invoke the Fifth Amendment in order to rely on it, and the defendant did not attempt to do that in this case. So I don't think the court needs to reach that issue here. He's already waived his Fourth Amendment arguments. Is that the position you're taking? His Fourth Amendment arguments? No, I don't think he's... The problem that's teed up by Judge Van Aske's question is, is the Fourth Amendment issue, as you just noted, it's like the Plain View Doctrine, what if you get in there? This isn't like opening up a safe. It's like opening up a gigantic building because there's conceivably so much information on there beyond what you're that you could find all kinds of things that could be incriminating and bad for the man. So the question asked of you is, are you willing to walk away from all that? And you just said, no. It's Plain View. We've got it. So is the government's position that Fourth Amendment issues shouldn't be weighing on our minds as we're trying to understand the implications of what you're asking us to do? I mean, I think that Fourth Amendment issue would appropriately be raised by the defendant in the suppression motion down the road. If he wants to argue that we should have been entitled to raise the Plain View Doctrine or that the Plain View Doctrine doesn't apply in this context, then that would appropriately be done if it comes to pass that there were additional categories of evidence here beyond the child pornography that we're seeking. But I don't see there's any indication that that's what the situation we're faced with here. Instead, we have strong, strong evidence that these devices were to store child pornography. But by decrypting and providing this evidence for criminal activity, other than what you're searching for, he's essentially incriminating himself. Under the foregone conclusion doctrine, there's the key point is that this would be a non-testimonial act of production under the foregone conclusion doctrine. The Fifth Amendment protects against incrimination. We had a case, I think the name was Thompson, but I'm very poor at case names, that involved government doing a search and seeing child pornography associated with a certain IP address. I'll give you a case in a minute, but I want to go through the hypothetical. And they go, they get a search warrant. And they go, in this case, let's, in this case, let's go and assume that that hard drive is encrypted. But what happens, actually, is that, and I don't know if the technology, so I could be way off base on this, but actually what happened in the case, the Thompson case, is that the fellow with the computer associated, that had the IP address associated with child pornography, didn't have any child pornography on his hard drive. He had a wireless router that wasn't protected, that wasn't password protected, and somebody else could access the internet through his wireless router and come up with, and download the child pornography. A device called Wucher Hunter was eventually used in order to obtain, to identify the computer that actually had the child pornography. But what about the person who has the wireless router that's unprotected, that then has to, under your comes out, no child pornography, but maybe there's evidence of other criminal activity. That, to me, is suggesting a problem. I mean, I think that problem is really a Fourth Amendment matter. I mean, the days before encryption, that's exactly what could happen in that situation. And it's really, the government would argue, plain view, if it had a search warrant based on probable cause, and it could potentially discover evidence of other crimes, it's appropriate, if the Fourth Amendment needs to be changed to modify that, it would, by all means, do so. But to invoke the Fifth Amendment to solve that problem, really, I mean, the Fifth Amendment is sort of the end of the day. It means the government can't get anything ever, period, we're done, and go home. And that's not the system. I don't know, I just think you can't get it from the target of your investigation. The Fifth Amendment protects against incriminating yourself. It's not the end of the day. The Fifth Amendment only protects against testimonial self-incrimination. And that's the key point here, is that under the foregone conclusion doctrine, the act of protection is not testimonial. I thought, you said that twice now, and maybe I have just misunderstood the way the doctrine works. I thought the foregone conclusion doctrine worked when there is something testimonial going on, but it doesn't matter because the government already knows it. I thought you only get into, if it was non-testimonial, we wouldn't be getting into it at all because the Fifth Amendment wouldn't apply at all, right? Irene Fisher is saying it's really more that it's potentially testimonial, but ultimately, and that is a non-testimonial act of surrender if the potentially testimonial components are already governed by the government. That doesn't make any sense to me, Justice, I'm sorry. But I thought, if it was really non-testimonial, we wouldn't even be talking about the Fifth Amendment, because the Fifth Amendment only protects testimonial expression, right? If it's not testimonial, the Fifth Amendment has no application. So the foregone conclusion doctrine only comes up when you have an act of protection which does have a testimonial aspect to it. But that testimonial aspect is something already known to the government, it's foregone. Have I misunderstood the way it works? I read the way Fisher's terminology for essentially the same in practice. Well, I've got to make sure I've got it right. So if the government itself is telling me that the foregone conclusion doctrine only applies when there's no testimony involved, it's non-testimonial, then I've got to say I've been running down the completely wrong path. Straighten me out. As I see it, if we know all of the potentially testimonial elements of an act of protection, then it's ultimately an act of surrender. But it's still testimonial. I mean, I believe the court uses, you know, this is not an act of testimony, but a surrender. I think it's at least a paraphrase of Fisher, as I read it. In Fisher, the court said that the Fifth Amendment did not protect an act of protection when any potentially testimonial component of the act of protection was a foregone conclusion that adds little or nothing to the sum total of the government's information. Yes, sir. I mean, I guess that's the language I'm using. Potentially testimonial. And so if it's potentially testimonial. I'm focusing on that adds little or nothing to the sum total of the government's information. But in this case, the government, while it has certainly probable cause to believe that child pornography is on the hard drive, they don't know what particular files are on that hard drive. Beyond a few, Your Honor. That's true. But I think it's important to note that with the foregone conclusion doctrine, the government needn't know everything that will be produced. It just needs to know the potentially testimonial elements of the act of protection itself. And here, the act of decrypting the drives will reveal the entire drive. And so what the court needs to look at is whether the magistrate judge can make a clear error in deciding that the government knew the potentially testimonial elements of the act of decrypting. And that's, I think, it's, you know, there's strong evidence in the record that the DOE knows how to decrypt the drives and that there's evidence stored on the drives or child pornography stored on drives. And that's why the magistrate judge did not clearly err in finding that we've established our burden and regarding the foregone conclusion doctrine. Let me read to you something from the 11th Circuit's In Re Grand Juris Subpoena Duca Stecum case from 2012. Looking at the question of foregone conclusion, this is on page 1346 of 675 third, the court said, nothing in the record before us knows whether any files exist and are located on the hard drives. What's more, nothing in the record illustrates that the government knows with reasonable particularity that DOE is even capable of accessing the encrypted portions of the drives. I've got, there are two things that the court is saying there. One, the government, there's no evidence that the government knows what's on the drives. Two, there's no evidence that the government knows that DOE's capable of accessing the encrypted portions. In other words, that he even knows the password. Now, it occurs to me that we need to ask ourselves what's implicit, what's the implicit or explicit testimony associated with the giving or the using of the password. The 11th Circuit goes on to talk about what's on the drives. Is there something implicit in the use or expression of the password that says something about what's on the drives? Or is the use or expression of the password limited to this second thing that the person is capable of accessing the encrypted portions? That's a long question. Do you understand what I'm trying to ask? So, I think in order, I mean, I think the act of production goes to, on this goes to accessing control. And it's certainly true that I think use of the password showed, you know, strong evidence that the defendant had as accessing control over the device. So, it's the second thing. In other words, when you enter the password, you are testifying or giving or expression to, I know the password, but you are not saying anything about what's in the decrypted files. Is that right? It's certainly, you know, just the act of typing in the password does not always show knowledge of what's in the decrypted files. I mean, you've got... When would it ever? When would it ever show knowledge of what's on the file? If the thing that's being forced, the testimony that's being forced is, give us the password either orally or type it in. What does that say other than, I know the password? That alone, I think, you know, it doesn't necessarily say anything more than that. I think here, by showing our knowledge of those storing child pornography on the drives, we essentially gave additional further evidence of his possession and control over the devices. And so, it's, you know, I think... So then, what's in his mind has nothing to do with what's on the hard drive. It only has to do with those little things that he has to type in there to find access. That's what he's giving up in his mind, right? Yes, Your Honor. I don't think it's necessary for the court to go this far in this case. You know, there might be another case where the government came, where all we could show was the knowledge of the password and nothing beyond that. But in this case, the court doesn't need to go quite so far. I think the combination of our showing those knowledge of the password and our knowledge of what he's storing in the devices is sufficient to show his access and control in this case. And it may come up in another case, whether we make further was All right. Mr. Donahue, rebuttal, please. Judge Nygaard, if I may just begin in terms of your final question about all that's being conveyed is the keystrokes, the particular password. I would just refer, Your Honor, to Hubble, the Hubble decision at page 1342, note 15, which describes how even when something is trivial in itself, if it leads to incriminating information, it's protected by the Fifth Amendment. Your Honor, I found it amazing that Mr. Judish suggested a person could be compelled to lead the government to a body in a murder case if the government could show to a foregone conclusion that the person knew where the body was. That defies, I think, any sense of the Fifth Amendment I'd ever had. It shows why the import of the act of production doctrine into this case is creating such a mismatch. The act of production doctrine, again, under Hubble, permits the government to compel the production of specific documents that it can identify with reasonable You stressed it, that what's being produced here are the entire contents of a hard drive, not specific documents, nothing that the government claims it's shown with reasonable particularity, but gigabytes of the most personal information for many of us in our lives. That's why there's a mismatch for one reason. So which is it? Because you seem to be going back and forth, Mr. Donahue, and I don't want to characterize your argument unfairly, but on the one hand, you're very insistent that this is testimonial and only testimonial because it's the password and it's in his mind, and it's not the act of, there's no act of production here, so the foregone conclusion doctrine doesn't come into play. But you do argue, in rebuttal, as you did in your opening, about this is problematic because of Hubble and all the things associated with producing a whole bunch of documents. Is there an act of production here or not? Your Honor, I am arguing in the alternative on that position. Our primary argument is that no, there is not. It's purely testimonial, and Your Honor has articulated our argument well. And I would stop there. That's argument one. Okay, so you're content, and that's your primary argument. Yes, that's our primary. That's the per se, go no further, and you really mean that, right? Yes, I mean it. Okay. All this act of production stuff, that's just your even if argument? That's a rebuttal argument. If we are going to apply that doctrine, it doesn't overcome my client's Fifth Amendment privilege here. Yes, I do maintain that position as well. And then I'll ask you the same question I asked Mr. Rumbold. Is it your position that something is either testimonial or an act of production, and never between somebody, it's fish or fowl? There's no such thing as an act of production with a testimonial aspect to it? No, I agree with Your Honor's take on that, even if I'm taking my own grave on that, that the foregone conclusion doctrine comes into play because there are certain testimonial aspects of the act of production that are implicit in that act. But this is not an act, is again my position, my primary position, which I wish to urge on the court. Even if your records are not protected, your mind is. And what the government is trying to do here is to compel somebody to give up the contents of their own so that the government can better understand evidence it's already seized. And the thing that's in his mind is not the gigabytes of information on the hard drive. The thing that's in his mind is the decryption password, right? The testimonial aspect of him entering the password is not the files. It is the password, right? That's right. It's that it's a memorized security code that exists nowhere but in his own mind, and that therefore is protected by the Fifth Amendment. Your Honor, may I make one more point about the act of production doctrine? I'm sure you go there, although I appreciate that. That's our primary position without a doubt, and I know you've in our briefing. But I just want to underscore that were production to be compelled pursuant to the foregoing conclusion doctrine, then we've submitted in our briefing there needs to be safeguards set up, because in fact the act of production doctrine would not entitle the government to all the contents of the computer. It entitles the government, if it applies, to those files it identifies with reasonable particularity. It hasn't, is our position, but if there are such files, if and when it tells us what those files are, those are the files it would be allowed to recover. And so the methods we suggested to limit the government's recovery to that would be either a taint team or a grant of immunity with regard to all other contents of the hard drives. Thank you very much, Mr. Dunhue. We thank Mr. Rummold and the amicus, and thank you, Mr. Jewish, for your argument on behalf of the government. We'll take the case.